IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIA M. JANNEY, | ) | CASE NO. 3:13CV399 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CAROLYN W. COLVIN, | ) | |
| COMMISSIONER OF SOCIAL, | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Julia M. Janney ("Plaintiff" or "Janney") seeks judicial review of the final

decision of Defendant Commissioner of Social Security ("Commissioner") denying her

applications for disability insurance benefits ("DIB") and supplemental social security income

("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has

been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to

Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.


**I.  Procedural History**

Janney filed her applications for DIB and SSI on October 2, 2009, alleging a disability

onset date of September 27, 2009.  Tr. 70.  She alleged disability based on affective and anxiety

related disorders.  Tr. 70.  After denials by the state agency initially and on reconsideration (Tr.

75-76), Janney requested a hearing.  Tr. 29.   A hearing was held before Administrative Law

Judge  ("ALJ") Jessica Inouye on August 30, 2011.  Tr. 27-58.  At the hearing, Janney amended

her disability onset date to September 27, 2009.  Tr. 31.

In her September 15, 2011, decision, the ALJ determined that Plaintiff's residual

functional capacity ("RFC") did not prevent her from performing work existing in significant

numbers in the national economy, i.e., she was not disabled.  Tr. 9-26.  Janney requested review

of the ALJ's decision by the Appeals Council. Tr. 6.  On December 12, 2012, the Appeals

Council denied Janney's request for review, making the ALJ's decision the final decision of the

Commissioner.  Tr. 1-5.


## II. Evidence

### A.  Personal and Educational Evidence[1]

At the time of the hearing, Janney was a 42 year old female.  Tr. 20.   Janney is a high

school graduate who didn't attend any special education classes and didn't receive any additional

vocational, educational, or military training.  Tr. 37.  Janney lives with her boyfriend and does

not drive.  Tr. 34, 38.

### B.  Medical Evidence

#### 1.  Treating Physicians

Janney was hospitalized at Defiance Regional Medical Center ("DRMC") from

September 27, 2009, to October 1, 2009.  Tr. 293-94.   Janney was reportedly very depressed

and having suicidal thoughts with a plan to overdose on her medication.  Tr. 293.  During her

initial assessment on September 27, 2009, Janney reported drinking excessively[2] for the last year

---

[1] Janney's vocational evidence is discussed in this R&R under the section on testimonial evidence.

[2] Janney reported drinking about 18 beers a day to the point of blackout.  Tr. 297.

and half.  Tr. 297.  Upon discharge on October 1, 2009, Janney was diagnosed with Bipolar disorder II, Nicotine Dependence, and Alcohol Dependence.  Tr. 293.

Janney obtained therapy and medication management from Recovery Services of Northwest Ohio ("RSNO") from October 2009 through May 2012.  Tr. 337-38, 347-66, 398-405, 414-15, 429-41, 460-62.  In October 2009, Janney reported she felt sedated and irritable at times, but stated she does not stay depressed.  Tr. 339.  She was prescribed Depakote, Seroquel, and Restoril, and told to discontinue Klonopin as it was too sedating.  Tr. 339.   In November 2009, Janney reported that she was having problems with her medications and felt they were not working.  She also stated that she was experiencing a depressed episode.  Tr. 357.  By December 2009, Janney reported that she had no issues with her medications and only "minimal anxiety." Tr. 351.  In January 2010, Janney reported that she had no issues with her medication and was in a good space with her mental health.  Tr. 347.

Cathy Ensign[3], MSW, LSW, Janney's therapist at RSNO filled out a daily activities questionnaire on July 6, 2010.  Tr. 396.  In the questionnaire, Ms. Ensign stated that in the past Janney's mood swings interfered with her interaction with co-workers and supervisors and that she was unable to complete a full day's work.  Tr. 396.  Ms. Ensign further noted that Janney's current anxiety interfered with Janney's ability to return to work, but that Janney is able to prepare food, perform household chores, maintain personal hygiene, and perform banking and bill paying.  Tr. 396-97.  Ms. Ensign stated that Janney does not handle stress well and with her bipolar disorder has shown poor attendance with past employment.  Tr. 396.

In August 2010, Janney's psychiatrist at RSNO, Melchor Mercado, M.D., reported that Janney was continuing to do well with no side effects from her medications.  Tr. 432.  On

---

[3] Both the ALJ and Plaintiff refer to a "Cathy Eicher," however; Plaintiff's therapist was Cathy Ensign.  E.g., Tr. 351, 353, 365.

November 23, 2010, Dr. Mercado signed a Medical Source Statement in which he opined that Janney had marked difficulties in responding appropriately to usual work situations and changes in a routine work setting because she gets easily frustrated and is unable to work under pressure. Tr. 425.  Dr. Mercado also found Janney had marked difficulties in her ability to carry out complex instructions, make judgments on complex work related decision, and understand and remember complex instructions.  Tr. 424.  However, Dr. Mercado found that Janney had no difficulties regarding simple instructions and simple work related decisions.  Tr. 424.  Finally, Dr. Mercado opined that Janney had moderate difficulties interacting appropriately with supervisors, coworkers, and the public.  Tr. 425.

In February 2012, Janney reported experiencing stress, due to her father being diagnosed with terminal cancer, and increased depression.  Tr. 439.  On May 16, 2012, Janney presented to DRMC due to a manic episode with lack of sleep, racing thoughts, and crying spells.  Tr. 436. Janney was noted to suffer from bipolar disorder and was assigned a GAF score of 30[4] upon admission and a score of 55[5] on discharge the following day.  Tr. 436-437, 460.

### 2.  State Agency Opinions

At the state agency's request, Janney met with consultative examiner Paul Deardorff, Ph.D., on March 2, 2010.  Tr. 368-375.  Dr. Deardorff stated that Janney appeared to be anxious and

---

[4] GAF (Global Assessment of Functioning) considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34.  A GAF score between 21 and 30 indicates "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g. stays in bed all day; no job, home, or friends)."  *Id.*

[5] A GAF score between 51 and  60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

depressed and assigned her a GAF of 49.[6]  Tr.  374.  With regard to her work related mental abilities, Dr. Deardorff opined that Janney had a mild impairment in her ability to understand, remember, and follow simple instructions and her ability to maintain attention, concentration, persistence, and pace.  Tr. 375.  He further opined that Janney had marked impairment in her ability to withstand the stress and pressure associated with day-to-day work.  Tr. 375.

On March 25, 2010, state agency psychological consultant Aracelis Rivera, Psy.D., after reviewing the medical evidence and the consultative examiner's report, opined that Janney was able to perform simple to mildly complex tasks of a repetitive nature in a work setting where changes are infrequent and social interactions superficial.  Tr. 380.  Another state agency psychological consultant, Dr. Steven Meyer, Ph.D., affirmed this opinion upon reconsideration on July 23, 2010.  Tr. 412.

### C. Functional Reports

**Janney Function Report.**  Janney submitted a functional report dated December 29, 2009.  Tr. 185-192.  In the report, Janney stated that, on most days, she gets dressed, eats, attends AA meetings, completes household chores, watches television, reads, gets ready for bed, goes to church on Sundays, and sometimes runs errands or visits friends in the afternoon.  Tr. 186.  Janney stated that, when she is depressed, she does not engage in personal care, eats very little, gets irritated easily, and can't concentrate or finish things she starts.  Tr. 186-87, 190. Janney stated that she had always quit jobs in the past and that she handles changes in routine and stress "very bad."  Tr. 191.

---

[6] A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." *Id.*

**Third Party Function Report.**  Janney's boyfriend, Mark Vajen, submitted a third party function report on Janney's behalf, dated June 24, 2010.  Tr. 202-09.  Mr. Vajen reported that Janney watches television, attends AA meetings, prepares her own meals, performs household chores, and shops for food two times a month.  Tr. 202-05.  Mr. Vajen stated that Janney talks on the phone and attends AA meetings almost daily.  Tr. 206.  He also stated that Janney has problems with family but friends are "ok."  Tr. 207.

Mr. Vajen reported that Janney sometimes sleeps all night and sometimes is up all day.  Tr. 203.  He stated that she is forgetful and has trouble concentrating.  Tr. 207.  Mr. Vajen also stated that Janney does not handle stress or changes in her routine well.  Tr. 208.

**D.  Testimonial Evidence**

**1.  Janney's Testimony**

At the administrative hearing, Janney was represented by counsel and testified that she was last employed as an assembly worker.  Tr. 34.  She stated that her hours were inconsistent "through my fault or my doing."  Tr. 34.  Janney said that she stopped working because she moved.  Tr. 34.  Janney testified to performing other work, such as factory work and farm work, but stated that she never held a job for a year or more.  Tr. 35-36.  When the ALJ asked why she never held a job for a year or more, Janney stated that it was due to stress.  Tr. 36.   Janney testified that she didn't have problems dealing with the public or supervisors but had problems in the past dealing with co-workers.  Tr. 37.  She also claimed she had problems when given specific production requirements.  Tr. 37.

Janney testified that she is currently prevented from working due to trouble with sleep, stress, and having a very low frustration level.  Tr. 40-41.  She stated that she has good and bad days and, on her bad days, she doesn't get out of her pajamas, doesn't leave the house, doesn't

talk on the phone, and tends to blow off the things she should be doing.  Tr. 41.  Janney testified

that she has bad days at least once a week.  Tr. 41.  Janney testified that she is presently taking

Seroquel, Cymbalta, Lamictal, and Ambien.  Tr. 42.  She stated that she sees Dr. Mercado, her

psychiatrist, for her medication but is currently taking a break from therapy.  Tr. 43.  When

asked why she's taking a break from therapy, Janney stated that she wasn't sure but thought she

hit a wall in therapy because she was really closed up.  Tr. 43.

Janney testified that, on a typical day, she watches television, plays on the computer for a

few hours, rolls her own cigarettes, fixes dinner, does household chores, and goes grocery

shopping. Tr. 43.  Janney further testified that she attends AA meetings four to seven times a

week and has been sober since the amended onset date of September 27, 2009.[7]  Tr. 43.  The

ALJ asked Janney if her drinking interrupted her ability to work or caused problems, to which

Janney replied, "I'm sure it did."  Tr. 39.

Janney testified that she also had arthritis in her back and sleep apnea but stated that she

hasn't gotten any medical treatment for these things because she doesn't have any insurance.  Tr.

47.

## 2.  Vocational Expert's Testimony

 Vocational Expert Dr. Hecker ("VE"), testified at the hearing.  Tr. 54-58.  The VE

testified to Janney's past work at numerous jobs, including:  counter attendant, packer, cleaner,

cashier, nurse's aide, assembly worker, and telephone solicitor.  Tr. 54.  The VE stated that there

are three different work history reports in Janney's file but none of them match.  Tr. 54.  The VE

stated that Janney had a great deal of work activity but he didn't think her past employment

---

[7] Janney's counsel was granted permission to amend the onset date during the hearing based on the date Janney
became sober. Tr. 31.

would meet the Substantial Gainful Activity standard under the Social Security regulations.  Tr. 67-68.

The ALJ then asked the VE whether there were any jobs in the national or regional economy for a hypothetical individual of Janney's age, education, and work experience, at all exertional ranges, who could perform work in a non-production paced, simple and unskilled environment, limited to routine and repetitive work, with a SVP[8] of no greater than 2, who does not work in close proximity with co-workers, meaning the individual could not function as a member of a team, and the job should be low stress, meaning only occasional changes in the work environment and only occasional decision making required as part of the job.  Tr. 55.   The VE testified that, in Ohio, the following jobs would be available to such a person: 10,000 jobs as a cleaner, 8,000 of the jobs at a light exertional level; 5,200 jobs as a packer; and other jobs that the VE did not identify.  Tr. 55-56.

The ALJ then changed the prior hypothetical by limiting the individual to a light exertional range with only occasional postural activities of climbing, balancing, stooping, crouching, kneeling and crawling, but no climbing of ladders, ropes, and scaffolds.  Tr. 56.  The ALJ then asked if there were jobs in the national or regional economy for this second hypothetical individual.  Tr. 56.  The VE stated, "I would cite the light jobs I cited in the previous hypothetical and add to it some 5,200 jobs a (sic) checker inspector…and again there would be other jobs."  Tr. 56.

Finally, the ALJ asked the VE to assume a third hypothetical individual who is the same as the second hypothetical individual but who also would be absent once a week.  Tr. 57.  The VE testified that there would be no jobs for such an individual.  Tr. 57.

---

[8] SVP refers to the DOT's listing of a specific vocational preparation (SVP) time for each described occupation. Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, *7-8 (Social Sec. Admin.  December 4, 2000).   Using the skill level definitions  in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2.  *Id.*

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.   If the claimant is doing substantial gainful activity, he is not disabled.

2.   If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.   If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.   If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is

capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920[9]; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the vocational factors to perform work available in the national economy. *Id.*

## IV. The ALJ's Decision

In her September 15, 2011, decision, the ALJ made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through March 31, 2011. Tr. 14.

2.    The claimant has not engaged in substantial gainful employment since September 27, 2009, the amended alleged onset date. Tr. 14.

3.    The claimant has the following severe impairments: drug and alcohol dependence, in remission; mood disorder; and sleep apnea. Tr. 14.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.[10] Tr. 15.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant's work should be non-production paced, simple, unskilled, routine, and repetitive with an SVP of no greater than two. She should not work in close proximity to coworkers, meaning the claimant

---

[9] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq, corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[10] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

       could not function as a member of a team.  Her work should be low stress, making only occasional changes in the work environment and only occasional decision making required as part of the job.  Tr. 16-17.

6.       The claimant has no past relevant work.  Tr. 20.

7.       The claimant…was 42 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date.  Tr. 20.

8.       The claimant has at least a high school education and is able to communicate in English.  Tr. 20.

9.       Transferability of job skills is not an issue because claimant does not have past relevant work.  Tr. 21.

10.     Considering claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  Tr. 21.

11.     The Claimant has not been under a disability, as defined in the Social Security Act, from September 27, 2009, through the date of this decision. Tr. 21.

The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council confirmed it on December 12, 2012.  Tr. 1.

## V. Parties' Arguments

### A.    Plaintiff's Arguments

Plaintiff argues that the Commissioner erred in determining her residual functional capacity ("RFC") and in not giving adequate consideration to her subjective allegations.  Doc. 15, p. 2.

### B.    Defendant's Arguments

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC findings and her credibility evaluations.  Doc. 16, pp. 15-19.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 20*03*).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.19*89*) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 19*84*).

### A.  The Commissioner adequately considered Plaintiff's subjective evidence along with the medical evidence

Janney argues that the Commissioner did not appropriately consider her subjective allegations along with the medical evidence. Doc. 15, pp. 13-14.  With regard to credibility, the ALJ determined that Janney's alleged symptoms were not consistent with the medical record to the extent that she claimed to be unable to perform any work and were not consistent with her daily activities.  Tr. 17-18.  The ALJ further found Janney's allegations with regard to the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC determined by the ALJ.  Tr. 17.  Janney argues that a finding that she was less than credible is not supported by substantial evidence and is in error.  Doc. 15, pp. 13-14.

Explaining her reasons for finding Janney's allegations of disabling symptoms not

credible, the ALJ stated:

> Since claimant's sobriety, the mental health treatment notes show that she has
> experienced significant improvement and emotional stability with treatment.  Her
> treatment includes therapy and prescription medications.  At times, she reported having
> racing thoughts, mood swings, and irritability; however, she often reported that she was
> doing "well."  Further mental status evaluations were generally unremarkable.  He (sic)
> psychiatrist often found that she was cooperative, that her contact was good, and that she
> denied suicidal ideation.  At times, her psychiatrist also found that her mood was
> euthymic or upbeat (12F; 15F).  The claimant testified that she does not experience side
> effects from her psychiatric medications (*see also* 15F).  She is currently attending AA
> meetings on a regular basis (at least 5 days a week) and she is generally compliant with
> her mental health treatment.  However, she testified that she is taking a break from
> therapy, which suggests that her symptoms are not as serious as she has alleged…
>
> The claimant's primary problem with work was that she could not tolerate stress in her
> past jobs (2E; 7F; 10F; 15F; Testimony).  However, the claimant admitted to using drugs
> and/or drinking alcohol during this time, which certainly interfered with her ability to
> work (7F).  Now that she is refraining from the use of substances, and receiving
> therapeutic support, it is logical to think that the claimant could perhaps function at a
> slightly higher level.
>
> The claimant's daily activities are not consistent with her allegations of disabling
> symptoms.  The claimant frequently attends Alcoholics Anonymous (AA) meetings.  She
> also watches television, manages her personal care, prepares simple meals, reads, plays
> board games, uses a computer, and does crafts.  Additionally, she rolls her own
> cigarettes.

Tr. 17-19.

The ALJ's credibility determinations are entitled to great deference because the ALJ had

the "unique opportunity to observe" the witness's demeanor while testifying. *Buxton,* 246 F.3d at

773; *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 476; *Walters v. Commissioner of*

*Social Sec.,* 127 F.3d 525, 531. On appeal, a reviewing court is "limited to evaluating whether or

not the ALJ's explanations for [discrediting the witness] are reasonable and supported by

substantial evidence in the record." *Jones,* 336 F.3d at 476. The ALJ's explanations for

discrediting Janney are thorough, reasonable, and supported by substantial evidence.   In this

case, the evidence in the record was conflicting and required the ALJ to make a credibility

determination. Because the ALJ provided specific explanations for her credibility finding, and

because her finding was within the zone of reasonable choices, her denial of Janney's application

for benefits must be affirmed. *See Buxton,* 246 F.3d at 773.  Considering the evidence as a

whole, the ALJ adequately considered Janney's allegations.

### B.  The ALJ's Step Five determination is supported by substantial evidence.

Janney also argues that the ALJ did not have substantial evidence to support a finding

that Janney was capable of sustained full time work and, as such, the ALJ did not meet the

Commissioner's burden at Step Five of the sequential evaluation.  Doc. 15, p. 9.  The ALJ found

that Janney could perform a full range of work at all exertional levels[11] with the following

nonexertional limitations:

> Claimant's work should be non-production paced, simple, unskilled, routine, and
> repetitive with an SVP of no greater than two.  She should not work in close proximity to
> coworkers, meaning the claimant could not function as a member of a team.  Her work
> should be low stress, meaning only occasional changes in the work environment and only
> occasional decision making required as part of the job.

Tr. 16-17.  Janney argues that objective medical evidence shows that her nonexertional

limitations are far greater than what the ALJ held and that she would need to miss one day a

week from work.  Doc. 15, p. 13.  Thus, Janney argues that the ALJ should have accepted the

vocational expert's testimony that no jobs would be available if the hypothetical individual had

to miss at least one day a week from work.  Doc. 15, p. 13.

In support of this contention, Janney states that she experiences the following symptoms:

an inability to focus the majority of the time, intrusive thoughts, social anxiety, irritability,

paranoia, hallucinations, mood swings, and suicidal tendencies, which limit her ability to work.

---

[11] Janney does not argue that the ALJ's exertional level finding was incorrect, only that Janney's nonexertional
limitations were greater than what the ALJ found.  Doc. 17, p. 3.

Doc. 15, p. 13.  Thus, it appears that Janney's RFC argument is a restatement of her subjective complaints/credibility argument.  The ALJ need not include a limitation based solely on Janney's subjective complaints. A subjective assessment of pain symptoms is relevant to determining whether a claimant suffers from a disability but is not conclusive evidence establishing a disability. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001) ("Subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.' ") (quoting 42 U.S.C. § 423(d)(5)(A)). In evaluating the claimant's subjective complaints of pain an administrative law judge may properly consider the claimant's credibility, and we accord great deference to that credibility determination. *See id.; Walters,* 127 F.3d at 531 (stating that an administrative law judge's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an [administrative law judge] is charged with the duty of observing a witness's demeanor and credibility."). *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).  As discussed in the prior section, the ALJ appropriately made a finding that Janney was less than fully credible.

Janney also states that her need for greater limitations than what the ALJ held is supported by objective medical evidence.  Doc. 15, p. 13.  However, Janney does not cite to any medical evidence in her brief in support of this contention.  Doc. 15, p. 13.  To the extent Janney's arguments are based on medical opinion evidence, Janney does not make an argument that the ALJ gave inappropriate weight to any of the opinion evidence.[12]  "Issues adverted to in a

---

[12] Cathy Ensign, Janney's therapist, opined that Janney's current anxiety interfered with her ability to return to work. The ALJ gave little weight to this statement because it was conclusory and did not provide a functional assessment. Tr. 19.  The ALJ also found that Janney reported that her drug and alcohol abuse affected her work history and that resulted in her not going to work on occasion.  Tr. 19.  Consultative examiner Dr. Deardorff opined that Janney had a marked impairment in her ability to withstand pressure associated with day-to-day work activity; however, the ALJ found that Janney is not so limited but noted that the RFC does limit claimant to low stress work.  Tr. 19. Neither Ms. Ensign or Dr. Deardorff are considered treating sources.  See SSR 82-59P (a physician whose only relationship to the claimant is as a consulting examiner may *not* be considered a treating source); SSR 06-03P (rehabilitation counselor and therapist are not acceptable medical sources).

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way,

leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th

Cir. 1997) (internal citations omitted); *Meridia Prods. Liab. Litig. v. Abbott Labs*., 447 F.3d 861,

868 (6th Cir. 2006); *see also Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 537 n. 5

(7th Cir. 1992) (applying waiver rule because judges need not devote time to "discussion of

argument, raised if at all, 'in a very opaque manner.'").

"Hypothetical questions . . .  need only incorporate those limitations which the ALJ has

accepted as credible." *Parks v. Social Sec. Admin.*, 413 Fed. Appx. 856, 865 (6th Cir.

2011)(citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The regulations make clear that a claimant's RFC is an issue reserved to the Commissioner and

the ALJ assesses a claimant's RFC "based on all of the relevant medical and other evidence" of

record. 20 C.F.R. §§ 404.1545(a); 404.1546(c); *see also Coldiron v. Comm'r of Soc. Sec.*, 391

Fed. Appx. 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ – not a

physician – ultimately determines a Plaintiff's RFC"); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.

Appx. 149, 157 (6th Cir. 2009) ("an ALJ does not improperly assume the role of a medical

expert by assessing the medical and non-medical evidence before rendering a residual functional

capacity finding").  The ALJ relied on the VE's testimony in response to a hypothetical that

incorporated the limitations that the ALJ determined were credible and supported by the record.

Reversal is not warranted because substantial evidence also supports a different conclusion, but

only if substantial evidence does not support the ALJ's conclusion.  *Crum v. Sullivan*, 921 F.2d

642, 644 (6th Cir. 1990).

Because the ALJ's finding was within the zone of reasonable choices, her denial of Janney's application for benefits must be affirmed. *See Buxton,* 246 F.3d at 773.  Therefore, Janney's argument that the ALJ did not have substantial evidence and did not meet the Commissioner's burden at Step Five is without merit.

### VII.  Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated:  January 21, 2014

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).